1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
------------------------------:
                              :
JAMES L. MCLEAN, et al.,      :
            Plaintiffs,       :
                              :
 -vs-                         :      Case No. 1:10-cv-456
                              :
                              :
RONALD A. RAY, et al.,        :
            Defendants.       :
                              :
------------------------------:
```

HEARING ON MOTIONS

January 7, 2011

Before:  Theresa C. Buchanan, Mag. Judge

APPEARANCES:

Allen H. Sachsel, Counsel for the Plaintiffs

Michael L. Chang, Counsel for the Defendants

1          NOTE:  The case is called to be heard at 10:05 a.m.

2   as follows:

3          THE CLERK:  James McLean, et al. versus Ronald Ray,

4   et al., case number 10-civil-456.

5          MR. CHANG:  Good morning, Your Honor.  Michael Chang

6   with Blankingship & Keith for defendants.

7          THE COURT:  Good morning.

8          MR. SACHSEL:  Good morning, Your Honor.

9          THE COURT:  Good morning.

10          MR. SACHSEL:  Allen Sachsel for the plaintiffs.

11          THE COURT:  All right.

12          MR. SACHSEL:  And I have with me one of the

13   plaintiffs, James McLean.

14          THE COURT:  Okay.  All right.  This is on the

15   defendants' motion to compel, and I have read the pleadings.

16          Do you have anything to add to your motion?

17          MR. CHANG:  No, unless Your Honor has questions.  I

18   did want to, briefly even, briefly just address some of the

19   representations made in the plaintiffs' brief.

20          THE COURT:  All right.

21          MR. CHANG:  Even though it does not address the

22   motions or the merits of this motion.  And I don't want to

23   belabor the point, but I wanted to say and go on the record

24   saying that their representations as far as the defendants'

25   efforts to settle this matter are patently false.  And I would

1    like to go on record saying that.

2         We have been engaged in the settlement process and

3    we would be very much willing to schedule some sort of

4    settlement conference or mediation.

5         THE COURT:  If you all want to do that when you

6    leave here now, you can go right to my secretary's desk and

7    try to schedule one either this morning or confer about dates

8    and give me a call.

9         MR. CHANG:  I think we can do that.

10        MR. SACHSEL:  That's fine.

11        THE COURT:  Okay.

12        MR. CHANG:  I think we can do that.  We are prepared

13   to do that.

14        THE COURT:  That's fine.  Sure.

15        MR. CHANG:  As far as what to add, you know,

16   briefly, as far as compelling the depositions, I would add as

17   far as in addition to what was in our brief, that they have

18   put themselves at issue as witnesses as far as Mr. Armstrong

19   and Mr. Sachsel.

20        THE COURT:  I am concerned about that.

21        MR. CHANG:  I'm sorry?

22        THE COURT:  I am concerned about that.  But, I am

23   sorry, go ahead.

24        MR. CHANG:  No worries.

25        THE COURT:  Let me just ask Mr. Sachsel, are you or

4

1    your co-counsel intending to testify?  I'm not quite sure how

2    this is going to work.

3              MR. SACHSEL:  No, we're not, Your Honor.

4              THE COURT:  Okay.

5              MR. SACHSEL:  Do you want me to address that now

6    or--

7              THE COURT:  No, I just wanted that question

8    answered.  So, go ahead and complete your argument.

9              MR. CHANG:  Well, that goes to part of our argument.

10   And that is that if Mr. Sachsel and Mr. Armstrong are willing

11   to agree not to submit affidavits in support of or in response

12   to any summary judgment motions or testify in this case, then

13   we don't need to depose them.

14             But it's clear from the allegations in the complaint

15   as well as what they have asked us to admit in requests for

16   admissions and in their interrogatory responses, which we just

17   got this week and which I would have attached to our brief had

18   I had them when it was filed, that they are witnesses in this

19   case.  Their allegations concern communications between

20   counsel.

21             And in addition to that, a good part of their

22   damages claims in this case have to do with billing and legal

23   fees that were incurred in the underlying litigation and in

24   the guardianship proceeding.  And the bills that they have

25   produced in response to document requests are merely summary

1   and do not provide any detail.  And we feel we are entitled to

2   question them about that, especially considering the amount of

3   their claim that that comprises.

4          THE COURT:  So, you think you still need the

5   deposition for that purpose alone, is for the fees issue?

6          MR. CHANG:  I would say so except for that, again,

7   if they are willing to not testify or submit affidavits in

8   support or in response to summary judgment--

9          THE COURT:  Even as to the fees?

10         MR. CHANG:  As to the fees, I mean, I would say that

11  if you are not going to testify in support and submit

12  affidavits, we don't need to depose them.

13         THE COURT:  All right.  What did you have--  I am

14  sorry, anything else?

15         MR. CHANG:  No.

16         THE COURT:  Okay.

17         MR. CHANG:  I will just reserve some rebuttal if you

18  have any points.

19         THE COURT:  Okay.  Mr. Sachsel.

20         MR. SACHSEL:  Your Honor, we have no intention of

21  submitting affidavits or testifying on a substantive matter.

22         THE COURT:  Okay.

23         MR. SACHSEL:  As we said in our opposition, I think

24  this is proper, if there is a question on the authenticity of

25  a document, yes.  But we are certainly not going to be--

1          THE COURT:  You can't have it both ways.  If you are

2     counsel, you can't testify as to the authenticity of a

3     document.  Even that little bit, you can't do that as well.

4          MR. SACHSEL:  Well, in that case we are not going to

5     testify.  However, my understanding is that it is proper for

6     counsel not becoming a witness to submit an affidavit or

7     authenticate a document.

8          But I don't think that is going to be an issue in

9     this case.  So, if that's the Court's ruling--  I mean, many

10    of these, most of these documents are pleadings.  And we have

11    agreed to, we haven't even produced them in discovery because

12    we are going to sit down and stipulate to their authenticity.

13    We just have no reason to testify, Your Honor.

14         THE COURT:  Okay.  Now what about the rest of the

15    motion?  You've agreed to produce part of it and you have.

16         MR. SACHSEL:  We did.

17         THE COURT:  Okay.

18         MR. SACHSEL:  And the answer on the one request

19    about documents having to do with Mrs. McLean's transfer from

20    one facility to another, we maintain the objection, but we

21    have no documents.  The defendants obtained by subpoena

22    documents from Carriage Hill--

23         THE COURT:  So, you have answered 10 of the document

24    requests, and that's the only one you've answered?

25         MR. SACHSEL:  I believe we've answered the--  We've

1   answered interrogatory number 10.

2          THE COURT:  Okay.

3          MR. SACHSEL:  And we've responded to request number

4   20 because, very frankly, we just didn't think that this was

5   worth contesting.

6          THE COURT:  Okay.  So, you've produced the documents

7   that you have with respect to number 20?

8          MR. SACHSEL:  Yes.

9          THE COURT:  You have answered number 10 and said

10  that they already, that you don't have anything in addition,

11  is that correct?

12         MR. SACHSEL:  That's right.

13         THE COURT:  And you answered interrogatory 10?

14         MR. SACHSEL:  Yes.

15         THE COURT:  So, still at issue are interrogatories 6

16  and 11 and document request 14?

17         MR. SACHSEL:  Yes, that's correct.

18         THE COURT:  Okay.  So, did you have anything to add

19  to your argument as to those?

20         MR. SACHSEL:  Well, the only thing I can say, Your

21  Honor, is what I said in the, in the memorandum.  And that is,

22  as far as medical records are concerned, there is no

23  contention that there was aggravation of an existing

24  condition, that there has been medical treatment sought.  And

25  there is just no reason to go into somebody's medical records.

1    This is not an issue.

2          If you look at the interrogatory answers, Mr.

3    McLean's claimed emotional distress has nothing to do with

4    anything but the fact that he was--

5          THE COURT:  Well, except that he is still claiming

6    it, he is still claiming emotional distress.

7          MR. SACHSEL:  We're claiming emotional distress.

8          THE COURT:  Right.

9          MR. SACHSEL:  But we are not claiming medical bills.

10         THE COURT:  It doesn't matter.  You know, once you

11   claim emotional distress, they are entitled to look into any

12   medical background to determine whether there is something

13   else that may be causing the emotional distress rather that

14   this issue.

15         MR. SACHSEL:  Well, Your Honor, we have answered the

16   interrogatory to this extent.  Because Mr. Ray in the

17   underlying litigation was constantly suggesting to me--  I

18   won't say constantly, but on several occasions suggested to me

19   that Mr. McLean may have psychological issues.

20         THE COURT:  Right.

21         MR. SACHSEL:  We have answered the interrogatory.

22   Mr. McLean has never been treated by a psychologist--

23         THE COURT:  Well, wait a minute, are you saying you

24   did answer number--

25         MR. SACHSEL:  In part.

1          THE COURT:  Well, we can't do it in part.  Either

2   you have to answer it completely or--  You know, that doesn't

3   do to do--  You have to answer it completely, not in part.

4          MR. SACHSEL:  We objected to the interrogatory.

5   However, because of Mr. Ray's allegations, without waiving

6   that objection, it says that Mr. McLean has no psychological,

7   psychiatric history, has never been treated by a

8   psychotherapist or counselor or whatever.  And that is what I

9   think they are looking for.

10          THE COURT:  It's not, and I will tell you why.

11   Because there has arisen before, and what they are entitled to

12   look at is if he has, even though he did not seek the services

13   of a psychiatrist, if he has perhaps some medical issue that

14   would affect his, whether or not he has emotional distress--

15   I mean, if, God forbid, Mr. McLean had some serious illness

16   that would cause him stress separate and apart from the issues

17   regarding his mother, they're entitled to explore that.

18          You know, if your client testifies that he has

19   sleepless nights or that he had, you know, stomach pains or

20   whatever just because of the stress of dealing with the

21   litigation over his mother, they are entitled to go back and

22   look at his medical records and say, well, isn't it true that

23   you have this issue or that medical issue or the other that

24   would cause perhaps sleepless nights or stomach pain.  I am

25   just hypothesizing.

1          They are entitled to look behind that and, you know,

2   not just accept your client's representation that he hasn't

3   had psychiatric treatment.  He may have complained to his

4   regular physician about issues in his personal life and that

5   might be reflected on the GP's records, you know, as something

6   that would cause emotional distress.

7          MR. SACHSEL:  Well, the other problem with that,

8   Your Honor, is that in order to evaluate that, you would need

9   expert testimony to evaluate medical records.

10          THE COURT:  Not necessarily.  Not necessarily.  Your

11   client is not going to have an expert, I take it.

12          MR. SACHSEL:  No.

13          THE COURT:  They are entitled to look at these

14   records and perhaps use them for cross-examination purposes

15   even if they don't have an expert to testify.

16          MR. SACHSEL:  All right.  I will tell you, you know,

17   if you are going to rule this way, I am going--

18          THE COURT:  I was just trying to explain the

19   rationale behind it.

20          MR. SACHSEL:  No, I understand the rationale.  And I

21   can tell you that Mr. McLean does not have any serious medical

22   problem.

23          THE COURT:  Okay.

24          MR. SACHSEL:  Here is the problem I have with this.

25   In a Fair Debt Collection Practices Act case there is a rather

1   long strong public policy here.  The usual damages, other than

2   the statutory damages, are emotional distress.

3           THE COURT:  Yeah.

4           MR. SACHSEL:  And as I said in my memorandum, I

5   think this creates a chilling effect.  Every time somebody

6   gets up and testifies, I was very upset over this telephone

7   call that told me to him come to the school because my

8   daughter was in an accident, every time somebody makes a claim

9   like this, you're discouraging--

10          THE COURT:  You open yourself up.

11          MR. SACHSEL:  You're discouraging people from coming

12  forward and enforcing this Act.

13          THE COURT:  Yeah.

14          MR. SACHSEL:  That really troubles me because who is

15  going to--  You know, frankly, if there were not other damages

16  here, I wouldn't be standing here in U.S. District Court to

17  try to get a $1,000 statutory damages and attorney's fees for

18  me and my co-counsel, I don't think that's what I would be

19  doing.

20          THE COURT:  Okay.

21          MR. SACHSEL:  So, the chilling effect of it does

22  trouble me very much.

23          THE COURT:  I understand that.  Anything as to the

24  other discovery requests?

25          MR. SACHSEL:  Yes.  There is no issue here about Mr.

1   McLean's management of his, of his mother's affairs.  That

2   issue was put to rest in Fairfax in the guardian ad litem's

3   report which I indicated is sealed and I didn't want to attach

4   it to the pleading.  May I pass it up, Your Honor?

5            THE COURT:  Sure.

6            MR. SACHSEL:  Now, by the way, the defendants

7   subpoenaed records from Carriage Hill.  We would have moved to

8   quash that subpoena but for the fact that it was over the

9   holidays and I indicated that it was not worth it.

10           They have issued another subpoena to a facility, an

11  assisted living facility, Sunrise, where Mrs. McLean was prior

12  to being hospitalized and prior to going to ManorCare.

13           I am really troubled by this fishing expedition on

14  what I think are irrelevant, at least collateral if not

15  irrelevant matters.

16           THE COURT:  Okay.

17           MR. SACHSEL:  And this report indicates, I think you

18  have read it, and it was referred to the administrator of

19  Carriage Hill, Jim Jarbeau, who indicated that bills of Edith

20  McLean are being paid and he is being attentive to his mother.

21           THE COURT:  Right.

22           MR. SACHSEL:  I just see that has absolutely no, no

23  relevance to this case.  We are not here to relitigate the

24  question of the guardianship/conservatorship.

25           And I would indicate one other thing, Your Honor.

1   The defendants have indicated that this whole

2   guardianship/conservatorship was settled within a few days of

3   the day it was filed.  There is no way it could be settled,

4   Your Honor.  All that was agreed to was that Mr. Armstrong

5   would serve as, Mr. Ray would consent if there was a guardian

6   conservatorship, Mr. Armstrong would serve as conservator and

7   Robert Machen as guardian.

8           You cannot just go ahead and settle a case like

9   this.  You have to rely on the, the Court has to rely on the

10  report of the guardian ad litem and the Court has to make a

11  decision.  Two people cannot just agree that there is going to

12  be a guardianship.  I mean, this is judicial supervision.

13          THE COURT:  I understand.

14          MR. SACHSEL:  All right.

15          THE COURT:  Okay, thank you.

16          Did you want to add something?

17          MR. CHANG:  Absolutely, Your Honor.  I will try to

18  be as brief as possible.

19          THE COURT:  Briefly.

20          MR. CHANG:  First, with regard to the medical

21  records.  Just briefly, I think you understand our argument.

22  This is not a case where they are asking for nominal damages.

23  They are asking for $200,000 in damages.  And their

24  interrogatory response is not sufficient.

25          As to the psychological issues that he says that Mr.

1    Ray hassled him about or apparent psychological issues, that's

2    not just from Mr. Ray, that's from Arlington Adult Protective

3    Services which we have received documents from and reports

4    saying that in fact Mr. McLean was not handling her affairs

5    correctly, was not properly managing them, was not paying the

6    bills and was not otherwise engaged.

7         Now, and then as far as the depositions and how

8    that, of counsel, and how that goes into what he was saying

9    about the settlement of the underlying case and the

10   guardianship, their response shows that that's in dispute, the

11   communications are in dispute, whether it was settled is in

12   dispute.  And I think that would put them at issue.

13        In addition to the billing issues which Your Honor

14   mentioned earlier that we should be able to question them on.

15        Now, as for further looking into the management of

16   Edith McLean's affairs by Mr. McLean, you know, it is at issue

17   despite his efforts to say it's not.  It's alleged, it is

18   alleged in the complaint, they sent requests for admissions

19   asking us to admit that they were, that he was properly

20   managing her affairs.  And looking into the billing disputes

21   and so forth with the previous nursing home as well as with

22   ManorCare and communications with ManorCare would help to

23   corroborate that.

24        Mr. Ray was in contact with Arlington Adult

25   Protective Services about that management and knew of their

1   findings.  And if they were to challenge those findings and

2   say, well, Adult Protective Services was wrong, we are

3   entitled to challenge that.  We are entitled to look

4   underneath that.

5          And I guess that's --

6          THE COURT:  Okay.  Thank you.

7          MR. CHANG:  -- all I would have to add since Your

8   Honor has admonished me to be brief.

9          THE COURT:  All right, thank you.  I read the report

10  of the guardian ad litem and I don't think that that resolves

11  anything with regard to the interrogatories or requests for

12  productions that the defendants have made, and I think that

13  they are entitled to this.

14         I am not sure that all of the results are going to

15  be admissible or relevant, that's something that the trial

16  court would have to deal with, but discovery is a little bit

17  broader than that.

18         So, did you have something you wanted to add?

19         MR. CHANG:  I did.  I am very sorry.  I forgot,

20  there was actually in addition to the ones that we included in

21  our brief, because we didn't receive the interrogatory

22  responses or the requests for production until this week--

23         THE COURT:  Yeah.

24         MR. CHANG:  There are just a couple of other ones as

25  far as what's at--

1          THE COURT:  Additional numbers here?

2          MR. CHANG:  Yes.

3          THE COURT:  I can't deal with them because they are

4    not the subject of this motion.  They haven't had a chance to

5    respond.

6          MR. CHANG:  Understood, Your Honor.

7          THE COURT:  So, but as to these, I am going to grant

8    the motion to compel.  I think that the plaintiff here has put

9    his emotional distress, his emotional distress claim rather

10   has put his psychological status at issue.  And they are

11   entitled to explore that fully.

12          And as to the other issues, his financial management

13   of his mother's affairs as well as the documents relating to

14   that, I think are definitely at issue.  As I said, that report

15   of the guardian ad litem doesn't help at all in resolving

16   that.  And I think that there is a real question here.

17          So, I am going to grant the motion to compel with

18   regard to the interrogatories and requests for production of

19   documents.

20          As to the interrogatory 10 and document request 10

21   that have been already answered, I am assuming that you've,

22   and document request 20, I'm assuming that you are satisfied

23   with those responses?  Or have you had an opportunity--

24          MR. CHANG:  Interrogatory 10 and request for

25   production 20, yes, Your Honor.

1        THE COURT:  And document request 10, okay.  10 I

2    think you said you answered in part.  So, you are going to

3    have to answer that completely, document request 10.

4        Now, as to the motion to take the deposition of

5    counsel.  Based upon the representation of Mr. Sachsel that

6    neither he nor his co-counsel are going to testify at trial,

7    nor will they file any declarations or affidavits with the

8    court in support of a motion for summary judgment or

9    otherwise, then I am going to rule that that matter is moot

10   since you have represented that you don't need the depositions

11   as long as they are not going to file that or--

12        MR. CHANG:  And that includes billing as well, or

13   any matters--

14        THE COURT:  Right.  I mean, no declarations, no

15   affidavits means no declarations, no affidavits, no testimony.

16        So, you can't do that.  You will be barred then from

17   testifying or filing declarations or affidavits.  And I will

18   find that motion is moot.

19        MR. SACHSEL:  Your Honor, if I may clarify.  My

20   understanding with regard to billings--

21        THE COURT:  They have the right to cross-examine you

22   on your bills if you are claiming them.

23        MR. SACHSEL:  I was assuming, and maybe I am

24   incorrect on this, that the--  This is a bench trial, Your

25   Honor.  And I was assuming that the Court can look at the work

1  done and look at the bills and make a determination if they

2  are reasonable, just as it does when it assesses fees in a

3  case.

4          THE COURT:  Well, wouldn't you have to, along with

5  your fees statement, submit an affidavit saying that these--

6  It's not this current litigation, it's other litigation that

7  you are submitting fees and bills for.

8          When the Court reviews a statement of fees and costs

9  incurred in litigation over which the Court has supervised, I

10 think the Court has a good sense of what was appropriate and

11 necessary, how many hours should have been spent on a motion

12 that the Court heard and so forth and so on.

13         But when you are talking about litigation that the

14 Court has not supervised, then there is really no basis for

15 the Court to make a judgment.  And either you are going to

16 have to testify about your bills in your prior case and why

17 they were reasonable and necessary, or not.

18         MR. SACHSEL:  I think we are--  You know, I am being

19 candid with the Court.

20         THE COURT:  Yeah.

21         MR. SACHSEL:  I think we are that much, we are not

22 just trying--  Anything substantive.

23         THE COURT:  Okay.  How are you going to represent

24 your client and testify?

25         MR. SACHSEL:  That is what is concerning me.

1          THE COURT:  Yeah, it is, a big concern.

2          MR. SACHSEL:  And the question is because our bills

3     are at issue as damages in this case, are we going to be

4     disqualified--

5          THE COURT:  I think you may be if you are going to--

6     If you plan to testify about those bills, I think you are

7     going to be disqualified, yes.  I think you are going to have

8     to choose.

9          MR. SACHSEL:  I think, and maybe I am mistaken on

10    this, I think Mr. McLean, who received the bills, can testify

11    that those bills were received.

12         THE COURT:  Right.  Who is going to testify that

13    they were reasonable and necessary?  And how are they going to

14    cross-examine him about the bills?  His answer is going to be,

15    gee, I really don't know exactly how much time was necessary

16    and why on that particular motion or that particular hearing.

17         MR. SACHSEL:  There--

18         THE COURT:  I think you are between a rock and a

19    hard place.

20         MR. SACHSEL:  I am between a rock and a hard place.

21         THE COURT:  And I can't get you out of it.

22         MR. SACHSEL:  I beg your pardon?

23         THE COURT:  I don't think I can get you out of it.

24         MR. SACHSEL:  Well, Mr. McLean is an attorney who

25    was getting these bills.  He is a member of the--

1          THE COURT:  But he didn't perform the work.  I am

2    going to leave it up to you.  I mean, this is really going to

3    be up to you.  If you are going to testify in any way, shape

4    or form about those bills, or file a declaration or affidavit

5    about those bills, then you are going to be subject to a

6    deposition in this case.  And I think that you are subject to

7    not, to being disqualified from representing your client.

8          If you are going to try to get it all in through

9    your client, I think that's up to you.  But how exactly, how

10   well that is going to work, I don't know.

11         MR. SACHSEL:  Your Honor, this is, you know, a

12   difficult issue now.  Can we have a day or two to advise the

13   Court and discuss it with our client and ourselves before you

14   rule on that?

15         THE COURT:  Well, let me ask you this.  What date

16   had you thought about for a deposition?

17         MR. CHANG:  We were thinking probably--  We have

18   already noticed and scheduled Mr. McLean's deposition for the

19   13th.  So, we know that they are available on that day.

20         THE COURT:  Okay.

21         MR. CHANG:  These depositions wouldn't take that

22   long.  And, you know--

23         THE COURT:  Okay.  So, the 13th is almost a week

24   from now.  What I am going to do is I am going to grant the

25   motion with regard to the deposition as to your fees and bills

1  because you are representing that you are not going to testify

2  otherwise as to the facts, as I understand it.  So, we are

3  only down now to the fees and bills and costs.

4          So, I am going to grant the motion unless before

5  that time you send a letter to defendants' counsel making the

6  explicit representation that you will neither file

7  declarations or affidavits or testify or your co-counsel

8  testify as to these fees and bills as well.

9          MR. SACHSEL:  Let me, may I make another proposal?

10  I am interested in serving my, our client.

11          THE COURT:  Right.

12          MR. SACHSEL:  And we both are.  And I think the rule

13  is that counsel has to, if he is a witness for his client--

14          THE COURT:  Yes.

15          MR. SACHSEL:  He can't proceed--

16          THE COURT:  I think we agree on that.

17          MR. SACHSEL:  Unless it would create a great

18  hardship for his client to withdraw.

19          THE COURT:  Right.

20          MR. SACHSEL:  That's my--

21          THE COURT:  And I don't think we're at that point

22  because --

23          MR. SACHSEL:  Well--

24          THE COURT:  We're almost finished with discovery,

25  but not quite, and there is time before trial.

1          MR. SACHSEL:  May I make--  And perhaps we should

2    have designated an expert to testify to the reasonableness of

3    the bills.

4          THE COURT:  It's too late now.

5          MR. SACHSEL:  And it's not possible to get that

6    time--

7          THE COURT:  No.

8          MR. SACHSEL:  That's what I was suggesting.

9          THE COURT:  No.  We're already 60 days past that.

10   So--

11         MR. SACHSEL:  Well, for us we're considerably more

12   than that passed that.

13         THE COURT:  Well, according to the Local Rules it is

14   60 days prior to the end of the discovery period.  So, you

15   know--

16         MR. SACHSEL:  Right.

17         THE COURT:  No, it's too late.

18         MR. SACHSEL:  So--

19         THE COURT:  So, you have got a decision to make that

20   you have got six days in which to decide.  I think you are

21   going to need to give counsel notice more than a day in

22   advance so he can call off the court reporter.

23         MR. SACHSEL:  May I raise another issue --

24         THE COURT:  Right.

25         MR. SACHSEL:  -- Your Honor, that concerns me about

1  this?  And that is the procedure that they have used here.

2  They have not subpoenaed us.  We're not parties.  And they

3  come in asking the Court to order depositions.

4        THE COURT:  Do you want them to subpoena you?

5        MR. SACHSEL:  Well, the point--

6        THE COURT:  Really, I mean, do you really want to

7  have them do that?

8        MR. SACHSEL:  No, but I think that's what they--  At

9  this point, no, we're going to do what the Court says, but the

10 point is I think that is the procedure they should have

11 followed.

12       THE COURT:  Okay.  Well then I will give them

13 additional time to subpoena you if you're not going to

14 cooperate.

15       MR. SACHSEL:  No, I am making it very plain--

16       THE COURT:  You have the right to have them subpoena

17 you if you want.  But you are going to have to decide.

18       MR. SACHSEL:  I'm saying they should have prior to

19 this.

20       THE COURT:  Okay.

21       MR. SACHSEL:  I am saying all they did was come into

22 court and say, order the depositions.

23       THE COURT:  Did you already give them a notice of

24 deposition for the 13th, you said?

25       MR. CHANG:  Your Honor, oh, for the 13th for Mr.

1   McLean?  Yes.  We didn't give them notice for--

2          THE COURT:  No, I'm sorry, what about Mr. Sachsel,

3   have you given him notice?

4          MR. CHANG:  No.  But what we did do is we asked them

5   for dates for Mr. Armstrong and Mr. Sachsel's depositions.

6   This is in our brief.

7          THE COURT:  Okay.

8          MR. CHANG:  This was back in December, middle of

9   December.

10         THE COURT:  All right.  So what I will do is--

11         MR. CHANG:  And they indicated that they wouldn't.

12         THE COURT:  You will need to give them the notice or

13   agree on a date.  I mean, really you can't do a notice of

14   deposition, you really have to do a subpoena.

15         So, you can subpoena him or you can agree to accept

16   service of that subpoena, Mr. Sachsel, and hopefully you all

17   can agree on a date for it to be taken.

18         I will give you an extra--  Discovery is supposed to

19   be closing on the 14th.  I will give you an extra week to

20   finish those depositions if they need to be taken.

21         So, you will be able to schedule those any time by

22   the 21st of January.

23         And what I want you to do then, Mr. Sachsel, is, as

24   I said before, send a letter to Mr. Chang as well as the

25   Court, let's say by the 12th--  Let's see, actually we better

1   do it by the 11th, close of business by the 11th advising

2   whether or not you intend to testify --

3           MR. SACHSEL:  As to the bills.

4           THE COURT:  -- in this case as to the bills.  And I

5   have already relied on your representations as to the rest of

6   it.

7           MR. SACHSEL:  All right.  And I will tell the Court

8   right now we are not going to require them to, you know, serve

9   subpoenas.

10          THE COURT:  Okay.

11          MR. SACHSEL:  You know, certainly we are going to

12  comply with anything the Court says.

13          THE COURT:  Okay.  Then fine, you all can just agree

14  on a date between now and the 21st.

15          MR. SACHSEL:  All right, thank you.

16          THE COURT:  Thank you.

17          NOTE:  The hearing concluded at 10:34 a.m.

18          ------------------------------------------------

19

20

21

22

23

24

25

26

1

2          C E R T I F I C A T E  of  T R A N S C R I P T I O N

3

4

5          I hereby certify that the foregoing is a true and

6   accurate transcript that was typed by me from the recording

7   provided by the court.  Any errors or omissions are due to the

8   inability of the undersigned to hear or understand said

9   recording.

10

11          Further, that I am neither counsel for, related to,

12   nor employed by any of the parties to the above-styled action,

13   and that I am not financially or otherwise interested in the

14   outcome of the above-styled action.

15

16

17

18

19

20              /s/ Norman B. Linnell

21              Norman B. Linnell

22              Court Reporter - USDC/EDVA

23

24

25