**In the**
**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | | |
|---|---|---|
| JAMES L. McLEAN | ] | |
| and | ] | |
| EDITH L. McLEAN, | ] | |
| Plaintiffs, | ] | |
| v. | ] | Civil Action No. 1:10-CV-456 |
| | ] | (LO/TCB) |
| RONALD A. RAY, ESQUIRE, | ] | |
| and | ] | |
| ECONOMOU, FORRESTER & RAY, | ] | |
| Defendants. | | |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS' AMENDED MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This case arises under the Fair Debt Collection Practices Act, 15 U.S.C. 1692, *et seq.* ("FDCPA" or "the Act"). The Defendants are an attorney and a law firm. Each Defendant is a "debt collector**"** within the meaning of the Act.

In March 2009 Defendants were engaged to collect a consumer debt allegedly owed to a nursing home, ManorCare of Arlington, Inc. ("ManorCare"), by Edith L. McLean. Mrs. McLean's affairs were and are being managed by her only child, James L. McLean.

The Second Amended Complaint ("Complaint") currently alleges 22 separate violations of the Act by Defendants – 11 violations against Edith L. McLean and 11 violations against James L. McLean. The violations against each Plaintiff are identical. The Complaint initially alleged 24 violations. The Court granted Plaintiffs' Motion for Voluntary Dismissal of Counts I and XIII, dismissing those Counts without prejudice.

Counts II through VII, IX, and Count XIV through XIX allege acts that occurred more than

one year prior to the May 5, 2010 filing of this action. The Court indicated at a hearing on

Defendants' Rule 12(b)(6) Motion to Dismiss that those Counts likely would "go out" as being time

barred. For reasons stated in our Motion, we elect not to further pursue those Counts; however, we

refer to the violations alleged in those Counts for purposes of background.

What remains for substantive decision is Counts VIII through XII and XX through XXIV.

Those Counts clearly involve discrete acts that occurred within the Act's one year Statute of

Limitations. (*Note*: Counts IX and XXI appear to reference the initial Arlington Complaint.

However, it is clear from the context – that the allegations of the Complaint are chronological – that

Counts IX and XIX intended to reference the October 2009 Amended Arlington Complaint, not the

initial Arlington Complaint. Both Counts IX and XXI incorporate by reference, *inter alia*, the

following language from ¶ 31: The "Amended Complaint increased the amount claimed . . . and,

once again, . . . improperly claimed applicability of the expired 2006 contract and sought attorney's

fees." The Court evidently read the pleading the way it was intended when it stated that Counts II

though VII and XIV through XIX likely are time barred. While Defendants state that Counts VII and

IX and XVI and XIX (*sic* XXI) "are identical and duplicative" (Def. Mem. at 21), it is clear

Defendants understand that Plaintiffs are making claims for violations of the Act relating to the

Amended Complaint.

Both Defendants and Plaintiffs have moved for summary judgment. To be clear that

Defendants' Motion inaccurately and incompletely states facts, we will respond to Defendants'

Motion separately and will, *inter alia*, incorporate by reference the substance of this Memorandum

into our Opposition to Defendants' Motion. For the Record, our Opposition to Defendants' Motion

for Summary Judgment, as indicated by the Statement of Material Facts in this Memorandum, will

contest as inaccurate or incomplete the facts as stated in ¶¶ 5, 7, 8, 9, 12, 13, 14, 15, 16, 17, 18, 19,

and 20 of Defendants' List of Undisputed Facts.  In addition, some of the facts Defendants state are immaterial.

Resolutions of the Summary Judgment Motions turn on: (1) Whether Plaintiffs' claims based on the Amended Complaint are time barred.  (Plaintiffs contend that the Amended Arlington Complaint was not for the same debt as that alleged in the Arlington Complaint because it included suit for a claimed debt that did not even exist at the time the Arlington Complaint was filed); (2) whether Defendants have established a *bona fide* error defense.  (Plaintiffs contend that Defendants had sufficient information to put them on notice that there were problems with the accuracy of ManorCare's claimed consumer debt.  Furthermore, even if the *bona fide* error defense applied to asserting an incorrect amount, Defendants had no procedures in place to assure that they were not improperly asserting claims for attorney's fees and interest based on an expired contract.  In fact, Defendants had information in their own files which should have caused them to question the applicability of the contract.  Furthermore, the claimed contract on which Defendants were relying contained no provision for interest.  Additionally, the amount of attorney's fees Defendants potentially were seeking, based on Defendant Ray's testimony with respect to such fees, far exceeded what was provided even in the inapplicable contract.); (3) whether a debt collector attorney can provide information in discovery in a consumer debt collection case that his client provides with no responsibility to review it for accuracy when the information is at least questionable on its face and contains information the debt collector attorney knew, or should have known, is false; and, (4) whether a debt collector attorney violates the Act by making dollar specific *quantum meruit* claims without having evidence to support the specific amounts of such claims.

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE[1]

1. This action was brought for violations of the Fair Debt Collection Practices Act, 15 U.S.C. 1692, *et seq.* ("FDCPA" or "the Act").  Complaint.

_____2. This Court has jurisdiction of this action pursuant to 28 U.S.C. 1331 and 15 U.S.C. 1692k. Exhibit 16 ¶2.

3. Plaintiffs are persons and are consumers within the meaning of the Act and have standing to bring this action.

---

[1]

The following exhibits are annexed to this Memorandum:

1. Letter of March 24, 2009
2. Arlington Complaint
3. Arlington Amended Complaint
4. Arlington Answer and Counterclaim
5. Arlington Requests for Admission
6. Arlington Answers to Requests for Admission
7. Arlington Motion for Summary Judgment
8. Arlington Second Amended Complaint
9. Defendants' Rule 26(a) disclosures in case at bar
10. 2007 Warrant in Debt
11. Letter of January 7, 2010
12. Letter of June 25, 2010 (mistakenly dated 2009)
13. Letter of June 28, 2010
14. Declaration of James L. McLean
15. Excerpts of Deposition of Ronald A. Ray, Esquire (*Note*: The entire deposition in condensed format was annexed as Exhibit 3 to the Memorandum in Support of our Motion for Reconsideration of Order of February 11, 2011 (Document No. 90).  A courtesy copy was delivered to Chambers.
16. Excerpts of Defendants' Responses to Requests for Admission in case at bar.

Plaintiffs' exhibits are numbered; Defendants' exhibits are lettered.  References to exhibit numbers are to Plaintiffs' annexed exhibits; references to exhibit letters are to exhibits annexed to Defendants' Memorandum in Support of their Motion for Summary Judgment.

4.   Defendant Ronald A. Ray, Esquire, is an attorney licensed to practice law in the Commonwealth of Virginia, and is a "debt collector" within the meaning of the Act.   Exhibit 16 ¶27.

5.   Defendant Economou, Forrester & Ray is a law firm, which maintains its office in Alexandria, Virginia, within this District and Division.  Exhibit 16 ¶¶30-31.

6.   Economou, Forrester & Ray is a partnership.  Exhibit 16 ¶32.

7.   Defendant Ronald A. Ray, Esquire, is a partner in the firm of Economou, Forrester & Ray.  Exhibit 16 ¶32.

8.   All acts committed by Defendant Ronald A. Ray, Esquire, were committed by Defendant Ray acting in his capacity as a partner in Economou, Forrester & Ray.  Exhibit 16 ¶33/

9.   Defendant Ray is a "debt collector" within the meaning of the Act.  Exhibit 16 ¶34.

10.   Defendant Economou, Forrester & Ray is a "debt collector" within the meaning of the Act.  Exhibit 15 ¶34.

11.   From on or about July 30, 2006 until on or about September 7, 2006, Plaintiff Edith L. McLean was a patient at ManorCare.  Exhibit 14 ¶19.

12.   At the time Edith L. McLean was admitted to ManorCare in 2006, Plaintiff James L. McLean, Edith L. McLean's only child, acting on behalf of his mother, signed a contract, which is a form contract used by ManorCare with which Defendant Ray was fully familiar. The contract provided, *inter alia*:

> This Agreement begins on the day You are admitted to the Center and ends on the day You are discharged from the Center unless you are readmitted within 15 days of Your discharge date.  If You are re-admitted within 15 days of being discharged from the Center, this Agreement will continue in effect as of the date of Your re-admission.

Exhibits 3 and 10.

5

13. The 2006 contract provided for collection expenses, including attorney's fees, to ManorCare, if collection action became necessary. It made no provision for imposition of interest. Exhibits 3 and 10.

14. On or about April 28, 2008, after an absence of nearly 20 months, Edith L. McLean was again admitted as a patient at ManorCare. Exhibit 14 ¶19.

15. No contract was signed or requested for Edith L. McLean at the time of her April 2008 admission to ManorCare. Exhibit 14 ¶19.

16. James L. McLean, at the time of Edith L. McLean's April 2008 admission to ManorCare, held both medical and general powers of attorney for Edith L. McLean, and has continuously held such powers of attorney to and including this date. Exhibit 14 ¶5.

17. There is no written contract applicable to Edith L. McLean's April 2008 admission to ManorCare. ManorCare did not request a contract at the time of the 2008 admission. Exhibit 14 ¶19.

18. Edith L. McLean remained at ManorCare from on or about April 28, 2008 until May 8, 2009.

19. James L. McLean, acting for Edith L. McLean, during the 2008-09 stay disputed charges claimed to be due for Edith L. McLean's 2008-09 stay at ManorCare. Exhibit 14 ¶20.

21. In March 2009 ManorCare referred Edith L. McLean's claimed debt for her 2008-09 stay at ManorCare to Defendants Ronald A. Ray, Esquire, and Economou, Forrester & Ray for collection action. Exhibit 16 ¶35.

22. On March 27, 2009, Defendant Ray, as attorney for ManorCare, filed suit against Edith L. McLean in the Arlington County, Virginia, Circuit Court. The Arlington Complaint made a claim for services allegedly provided to Mrs. McLean from April 28, 2008 through January 31, 2009.

Exhibit 2.

23.   Prior to filing suit, on or about March 24, 2009, Defendant Ray wrote a letter ("the Letter") to Edith L. McLean demanding payment to ManorCare of $15,814.44, plus interest and attorney's fees.  Exhibit 1.

24.   The Letter stated that suit had been filed against Edith L. McLean.  Exhibit 1.

25.   The Letter also stated that Edith L. McLean had 30 days to contest the debt or that the debt would be assumed valid.  Exhibit 1.

26.   At the time Defendant Ray sent the Letter to Edith L. McLean suit had not been filed. Thus, the Letter made a false statement in an attempt to collect a debt.  Exhibits 1 and 2; Exhibit 16 ¶50.

27.   A copy of the Letter was mailed to James L. McLean by ManorCare on or about April 23, 2009.  Exhibit 14 ¶23.

28.   James L. McLean received and read the Letter on or about April 25, 2009.  Exhibit 14 ¶23.

29.   At the time Defendant Ray signed and mailed the Letter he had not reviewed ManorCare's file to determine the accuracy of ManorCare's claim and had not reviewed documents to determine the legal basis for ManorCare's claims for interest and attorney's fees.  Exhibit B ¶7; Ray Dep. (Exhibit 15) at 14-19.

30.   Defendants had no procedures in place to assure that they did not claim attorney's fees when there was no contract or other legal basis for such a claim.  Exhibit B ¶7; Ray Dep. at 14-19.

31.   In March 2009 Defendant Ray knew, or, if he had checked his own files, would have known, that Edith L. McLean had not been at ManorCare continuously since July 30, 2006, and that there had been more than a 15 day hiatus between admissions.  Ray Dep. at 60-70.

32.  In November 2007 Defendant Ray, representing ManorCare sued Edith L. McLean in the Arlington County General District Court for a debt claimed to be owed to ManorCare.  Exhibit 10 and Exhibit 14 ¶13.

33.  The 2007 suit was nonsuited when James L. McLean resolved the matter with ManorCare since the amount claimed was paid by Medicare.  Exhibit 14 ¶¶13-17.

34.  Unlike the 2009 suit, which directed service on Mrs. McLean at ManorCare, the 2007 suit showed Edith L. McLean's address for service of the suit as her home in Falls Church, Virginia. Exhibit 10 and Exhibit 14 ¶ 34.

35.  When Defendant Ray was preparing the Letter and the 2009 Arlington Complaint his secretary brought to his attention that there was another file relating to Edith L. McLean.  Exhibit B ¶9.

36.  Defendant Ray did not check that file in any detail.  Had he done so, it would have caused him to question whether Edith L. McLean was at ManorCare continuously since July 30, 2006.  The affidavit Defendant Ray attached to the Warrant in Debt stated that the suit was for the period  July 30, 2006 to September 7, 2006.  Ray Dep. at 67-70, 235-236.

37.  Defendant Ray routinely includes an allegation of continuous residence in his collection action complaints.  Ray Dep. at 70.

38.  Defendant Ray does not check facts to confirm that the allegation of continuous residence is true.  Exhibit B ¶7; Ray Dep. at 15.

39.  Defendant Ray was and is aware that patients at ManorCare often are discharged and readmitted. Ray Dep. at 15, 67.

40. The Letter stated the amount due ManorCare as $15,814.44.  Exhibit 1.

41.  The amount stated in the Letter was false.

42.   The Letter claimed that Edith L. McLean was responsible to ManorCare for attorney's fees and for interest.  Exhibit 1.

43.   There was no contractual or other legal basis for the claim in the Letter that Edith L. McLean was responsible to ManorCare for either interest or attorney's fees.  Exhibits 3 and 10; Exhibit 14 ¶19.

44.   The letter stated that Defendant Ray had filed suit on behalf of ManorCare against Edith L. McLean.  Exhibit 1.

45.   On the date of the Letter – March 24, 2009 – Defendant Ray had not filed suit against Edith L. McLean.  Exhibit B ¶8.

46.   The suit by Defendant Ray on behalf of ManorCare was not filed until March 27, 2008.  Exhibit 2.

47.   The Letter, in apparent contradiction of the statement that suit had been filed, stated, *inter alia*, that Edith L. McLean had 30 days to contest the debt, or that it would be assumed valid.  Exhibit 1.

48.   The Complaint filed in the Arlington County Circuit Court by Defendant Ray on March 27, 2009, claimed $15,814.44.  Exhibit 2.

49.   The Arlington Complaint referenced the 2006 contract with Edith L. McLean as Exhibit 1, however, a copy of the referenced contract was not attached to the Complaint.  Exhibit 2.

50.   There was no affidavit attached to the Arlington Complaint.  Exhibit 2.

51.   The Complaint filed in the Arlington County Circuit Court alleged that Edith L. McLean had been a patient at ManorCare continuously since July 30, 2006.  Exhibit 2.

52.   The statement in the Complaint that Edith L. McLean had been at ManorCare continuously since July 30, 2006 was false.

9

53. The Complaint relied as the basis of its claim for attorney's fees on the contract signed for Edith L. McLean on July 31, 2006.  Exhibit 2.

54. The suit filed against Edith L. McLean by Defendant Ray in 2007 showed that it was to be served on Edith L. McLean at her home in Falls Church, Virginia.  Exhibit 10; Ray Dep. at 64.

55. Notwithstanding that Defendant Ray's files showed that Edith L. McLean was not at ManorCare in 2007, he made no investigation to determine whether his allegation that Edith L. McLean had been at ManorCare continuously since July 30, 2006 was accurate. Ray Dep. at 68-70.

56. At least as early as July 16, 2009, Defendant Ray was put on notice by Stephen A. Armstrong, Esquire, counsel for Edith L. McLean, that there was no written contract covering the time period for which Defendant Ray was suing for ManorCare.  Exhibit B ¶12.

57. In September 2009 Defendant Ray sought leave of Edith L. McLean's counsel to file an amended Complaint in the Arlington County Circuit Court to amended the amount claimed due to include a debt Edith L. McLean incurred after the filing of the Complaint.  Exhibit B ¶13.

58. In September 2009 Defendant Ray was put on notice by counsel for Edith L. McLean that there was no written contract justifying the claim for attorney's fees because there was no written contract covering the 2008-09 stay and because there had been a long break between Edith L. McLean's 2006 and 2008 admissions.  Exhibit B ¶13.

59. Despite being put on notice Defendant Ray took no effective action to determine whether there was a sufficient break between Edith L. McLean's two ManorCare stays to make the 2006 contract inapplicable to the 2008-09 stay.  Exhibit B ¶14/

60. On October 9, 2009, Defendant Ray, as counsel for ManorCare, filed an Amended Complaint in the Arlington County Circuit Court.  It alleged a new claim for debts allegedly incurred after the filing of the Arlington Complaint, and which, therefore, could not possibly have been

included in the Arlington Complaint because the claimed debt did not exist at the time the Arlington Complaint was filed.  Exhibit 3; Exhibit B ¶16; Exhibit D.

61.  Defendant Ray could have delayed submitting the consent Order permitting filing of the Arlington Amended Complaint and investigated to confirm that Edith L. McLean had not been continuously at ManorCare since July 30, 2006, and that there was a nearly 20 month period between her admissions.  Instead, he filed the Amended Complaint that in Count I illegitimately sought attorney's fees.  Ray Dep. at 56.

62.  The Amended Arlington Complaint sought $70,147.67 as the amount of the claimed debt owed to ManorCare by Edith L. McLean.  This amount allegedly included amounts for services provided to Edith L. McLean, after the filing of the Arlington Complaint.  Thus, the Amended Arlington Complaint made a new claim because it included amounts that allegedly were for services provided after the filing of the Arlington Complaint, and thus could not have been included in the Arlington Complaint.  Exhibit B; Exhibit D.

63.  The Amended Arlington Complaint falsely alleged that Edith L. McLean had been at ManorCare continuously since July 30, 2006, and on that basis, relying on the 2006 contact, sought attorney's fees.  It also sought interest with no contractual or other basis.  Exhibit 3.

64.  The amount sought in the Amended Arlington Complaint as the claimed debt owed to ManorCare by Edith L. McLean was false.

65.  The Amended Arlington Complaint and the Second Amended Arlington Complaint made dollar specific *quantum meruit* claims in Counts II and III without a factual basis to support the dollar specific amounts claimed.  When discovery was submitted to ManorCare asking for the basis for the *quantum meruit* amounts claimed, the response received through Defendant Ray was that there was need to consult an expert to determine and/or justify the specific amounts claimed as

*quantum meruit*.  Exhibits 3 and 8; Exhibit F at 2.

66.  On or about October 16, 2010, Defendant Ray confirmed that the 2006 contract was inapplicable to Edith L. McLean's 2008-09 stay at ManorCare, and that there was no contract that could serve as a basis for an attorney's fees claim in the Arlington case.  Ray Dep. at 124-125.

67.  Defendant Ray allowed the knowingly false pleading to remain pending, having obtained knowledge that he had filed a false pleading.  Ray Dep. at 132-136.

68.  On October 30, 2009, Edith L. McLean's counsel served and filed an Answer and Counterclaim in response to the Amended Arlington Complaint.  The Answer pled as a defense that there was no written contract applicable to her 2008-09 stay, and that there thus was no basis for the claim for attorney's fees.  Exhibit 4; Exhibit B ¶20.

69.  Still, Defendant Ray took no action to correct a knowingly false pleading.  Ray Dep. at 135-136.

70.  In November 2009 Edith L. McLean's counsel served Requests for Admission directed primarily to the issue of the absence of the written contract.  Exhibits 5 and 6.

71.  Defendant Ray timely responded to the Requests for Admission, admitting the inapplicability of any written contract that would support a claim for attorney's fees.  Exhibit 6.

72.  Still, Defendant Ray took no action to correct a knowingly false pleading. Ray Dep. at 132-136.

73.  In December 2009, based on Defendant Ray's responses to the Requests for Admission, Edith L. McLean's counsel served a Motion for Summary Judgment on Count I of the Amended Arlington Complaint, alleging that the 2006 contract did not apply and provided no basis for an award of attorney's fees.  Ray Dep. at 133.

74.  Defendant Ray continued to allow a knowingly false pleading to pend.

75. On January 8, 2010, Defendant Ray effectively conceded the Summary Judgment Motion at the noticed hearing on the Motion by endorsing consent to an Order dismissing with prejudice Count I of the Amended Arlington Complaint. Defendant Ray did not prepare the Order. It was prepared by Edith L. McLean's counsel. Ray Dep. at 133-136.

76. On January 8, 2010, Defendant Ray filed a Second Amended Arlington Complaint. The Second Amended Complaint claimed a debt of $65,809.50. Exhibit 8.

77. During the course of discovery in the Arlington case Defendant Ray promised to provide contact information for persons identified from documents Defendant Ray had provided. Following his failure to provide the promised contact information and a motion to compel in the Arlington County Circuit Court case, Defendant Ray provided false information. Specifically, the response Defendant Ray provided represented that there was no information with respect to a number of ManorCare present or former employees and falsely represented that certain employees were at ManorCare's corporate headquarters in Toledo, Ohio. These employees included: Lucille Brown and Bev Ingles. Exhibit B ¶22; Exhibit G.

78. In Defendants' Initial Disclosures in this case, Defendants listed addresses and telephone numbers for Bev Ingles, and showed Lucille Brown's address as unknown and gave a local address for Bev Ingles. Exhibit 9.

79. In their final Rule 26 disclosures Defendants showed Lucille Brown's address as being at ManorCare in Arlington, Virginia, and gave a local address for Bev Ingles. Document No. 72.

80. Defendant Ray, at the time of the discovery response, was well aware that neither Lucille Brown nor Bev Ingles were in Toledo, Ohio at ManorCare's headquarters.

81. Defendant Ray was regularly in contact with Bev Ingles as part of his collection practice collecting for ManorCare. Ray Dep. at 21-22, 51, 123, 125, 127, 172.

82. Defendant Ray had spoken with Lucille Brown in April or May 2009.  Ray Dep. at 156.

83. When asked whether he had stated that Lucille Brown was in a management position at ManorCare's headquarters in Toledo, Ohio, Defendant Ray responded, "That's ridiculous."  Ray Dep. at 156.

84. Defendant Ray has stated that he did not review the false discovery response prior to serving it and made no attempt to assure its accuracy.  Exhibit B ¶22; Ray Dep. at 161.

## ARGUMENT

### I.  DEFENDANTS' CONDUCT, AS ALLEGED IN COUNTS II THOUGH VII, AND, AS ALLEGED IN COUNTS XIV THROUGH XIX, EVIDENCE VIOLATIONS OF THE ACT.

Counts II through VII and Counts XIV through XIX plainly show a disregard for the proscriptions of the Act.  These matters may be considered in evaluating Defendants' conduct with respect to other Counts of the Complaint that clearly are not precluded by the Statute of Limitations.

It is a violation of the Act for a debt collector  to "use any false, deceptive, or misleading representation or means in connection with the collection of any debt", including specifically, "[t]he character, amount or legal status of any debt; or . . .  any services rendered or compensation which may be lawfully received by any debt collector for the collection of the debt."  15 U.S.C. 1692e(2)(A) and (B).  15 U.S.C. 1692f(1) prohibits the collection or attempted collection of "any amount (including interest, fee, charge or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

It is undisputed that there was no legal basis to claim attorney's fees or interest from March 1, 2009.  Yet, that is precisely what Defendant Ray did in his letter of March 24, 2009 and in the Arlington Complaint, filed March 27, 2009.  These were clear violations of the Act.

In this case it is undisputed that there was no contract with Edith L. McLean.  Nor have

Defendants ever claimed in this case any legal basis for the attorney's fees demands in the Letter or in the Arlington Complaint. According to Defendant Ray, he had information in his own files, which files were brought to his attention by his secretary in March 2009, when he was preparing the initial papers, that he had sued Edith McLean in 2007, that the matter involved a 2007 stay at ManorCare, that Edith McLean was not at ManorCare in November 2007 when that suit was filed, that he had that information when the suit was filed, but did not review it, and that "the continuous stay language in [his] pleading is standard form [he] use[s] in terms of the pleading." *See* Ray Dep. at 60-70. Indeed, Ray further admitted, "[I[t is fair to say that had I made further inquiry at that time, I might have asked additional questions and I might have questioned the referral from"(Ray Dep. at 70). Ray does not question referral forms with regard to the question of a break in nursing home stay and the contract's applicability even though he is well aware that, "It is very ordinary and very usual that persons are admitted to facilities, they leave the facility, and they are readmitted to the facility" (Ray Dep. at 67). As Ray stated on June 23, 2010, in the Arlington County Circuit Court, "I would point out, and I hope you can understand, that I really don't question these referral forms" (Ray Dep. at 15). Moreover, even were the contract applicable, the claim for interest is not authorized by the contract and is itself a violation of the Act. (The contract is annexed to the Amended Complaint and to the 2007 Warrant in Debt. *See* Exhibits. 2 and 10.) The contract provides with respect to recoverable expenses other than the debt itself at the top of page 2, "If We hire a collection agency or attorney to collect payment on Your account, You will pay these collection costs." Moreover, contrary to the terms of the contract (and perhaps involving other ethical problems) Defendant Ray attempts to obtain, or obtains, judgments for attorney's fees that far exceed the expense ManorCare incurs. *See* Ray Dep.at 24-30. After explaining that the amount he submits for attorney's fees includes the time he estimates would be spent in the future to collect a judgment (interestingly a set

percentage), Mr. Ray gave the following example (Ray Dep. at 29):

> If I were to have a bill for, let's say, $1,000 in that case, and I were to get a judgment against the McLeans for $15,000.00 and change, plus $3,000 in attorney fees, and then . . . Mr. McLean . . . wrote me a check for $18,000 and change, I would bill my client $1,000. My client would receive $15,000 principal sum, plus the $2,000 excess in attorney's fees that are awarded by the Court, plus the cost.

Similarly, Ray was on notice that there were significant problems with ManorCare's billings and its financial administration. Thus, according to Ray, the referral form from ManorCare claimed that over $57,000.00 dollars was due. However the ledger sheets sent with it showed just over $15,800.00. According to Ray, when he questioned this, he was told that the McLean's had made payment, which was not yet credited. (Ray Dep.at 18). While we do not dispute that a debt collector may, to some extent rely on this client's statement of the amount owed, when there are "red flags", we suggest he has an obligation to do more. We need not belabor that point with regard to the Arlington Complaint. The violation becomes much more into focus and clearer with respect to the Amended Arlington Complaint.

Nor is there any doubt the March 24, 2009 Letter contained false statements, and that it was confusing. It is undisputed that the letter was dated March 24, 2009, and that it stated suit had been filed against Edith McLean. It is undisputed that suit had not bee filed. According to Mr. Ray, the letter was mailed on March 25. Whether the Letter was mailed on the 24th or the 25th is, of course, immaterial. The fact is suit had not been filed. Thus, the statement was false.

Likewise, it is clear the Letter is confusing. It stated that the recipient has 30 days to dispute the debt, or that the debt will be assumed valid. At the same time, the Letter stated that suit has been filed. No one, especially the least sophisticated consumer (*See U.S. v. National Financial Services, Inc.*, 98 F.3d 131, 135-38 (4th Cir. 1996)), which is the standard by which this kind of

16

"overshadowing" is to be judged, knows what is expected of him, and what his rights are.

In any event, as stated above, these matters are simply background evidence, and, certainly, are relevant in evaluating Defendants' conduct discussed below.

## II. THE AMENDED COMPLAINT IN THE CASE AT BAR WAS TIMELY, AND THE UNDISPUTED FACTS CLEARLY ESTABLISH VIOLATIONS OF THE ACT.

**A.** At the outset, as we stated in responding to Defendants' Rule 12(b)(6) Motion, we do not dispute the principle of law that generally, new communications relating to an old debt do not constitute new violations of the Act so as to revive the FDCPA one year Statute of Limitations, nor do such communications create a new limitations period for each one. That said, it is clear that the Amended Arlington Complaint and the Second Amended Arlington Complaint did not involve the same debt as that sued for in the Arlington Complaint.

The Arlington Complaint was filed on March 27, 2009. It sought recovery for services rendered to Mr. McLean up to January 31, 2009. There is no question that the Amended Arlington Complaint was a suit for a new debt. It included services rendered from January 31, 2009 to May 8, 2009. Apart from the fact that the Amended Arlington Complaint included a claimed debt that could not possibly have existed on March 27, Defendants themselves have made clear that it was a new claim. Thus, Defendant Ray's Motion for Leave to File Amended Complaint, he stated (emphasis added) (Exhibit D at 1):

> 2. The defendant was discharged from the plaintiff's facility on or about May 8, 2009.
> 3. Additional services were provided to the defendant, Edith L. McLean, for which plaintiff has not received full payment and *the ends of justice would be served by having  all of plaintiff's claims against the defendant consolidated into a single Complaint.*

The Order granting Defendant Ray's Motion was drafted by him. It provided, in relevant part (emphasis added) (Exhibit D at 3):

APPEARING TO THE COURT that additional nursing home care and services have been provided to the defendant by the plaintiff since the filing of the Complaint herein, that *the ends of justice would be served by having all of plaintiff's claims against the defendant consolidated and heard in one case* . . .

In *Calka v. Kucker, Kraus & Burh, LLP*, 1998 U.S. LEXIS 11868 (S.D.N.Y. 1998), stated at *9 (emphasis added):

Calka, however, cites no case to support the proposition that each proceeding in the State Action amounted to a new FDCPA violation. *Nor does Calka allege the amended complaint and summary judgment motions contained any new misrepresentation of the amount due not in the original complaint . . . .*

Thus, *Calka* recognized that an amended complaint that changes or makes new misrepresentations is not a further communication about an old claim. It is a new claim.[2]

*Nutter v. Messerli & Kramer, P.A.,* 500 F. Supp.2d 1219, 1223 (D. Minn. 2007), lends further support for our position that claims growing out of the Amended Arlington Complaint are timely As stated above, the amount sought in the Amended Complaint was for admittedly new claims. While *Nutter* provides support for the general rule that new communications about an old claim do not revive or extend the FDCPA Statute of Limitations, by contrast, the amount of the claimed debt in *Nutter* never changed. *There was no amended complaint that changed the amount sought or added new claims.* The communications complained of all were about the same claimed debt. The court ruled only that each communication about the same claimed debt does not begin anew the Statute of Limitations.

Moreover, Edith McLean's counsel agreed to the filing of the Amended Complaint based on

---

[2]

Though we did not specifically plead it as a violation, it is likely that by failing to give the notice required by 15 U.S.C. 1692g Defendants further violated the Act. The Fourth Circuit has expressly held that communications with a debtor's counsel are covered by the FDCPA. *See Syyevd v. Wolpoff & Abramson*, 485 F.3d 226, 232-33 (4th Cir. 2007).

Mr. Ray's promise that the claim based on a written contract and the attorney's fees claim flowing from it would not be reasserted. Clearly, that broken, false promise was a misrepresentation. It was new. Irrespective of how one views the other issues relating to the Statute of Limitations, everything that occurred on or after May 5, 2009, is not time-barred. False representations by a debt collector to a debtor's counsel violate the Act. *See Syyed, supra*.

Defendant Ray admits the following in his Affidavit (Exhibit B at 6) regarding a telephone conversation "[s]ometime between September 22, 2009 and September 28, 2009:"

> Mr. Sachsel stated that the contract says that if the patient is discharged from Manorcare and readmitted after 15 days, then the contract ceases and a new contract has to be executed, and that Ms. McLean at some point was out of Manorcare for more than 15 days. I asked Mr. Sachsel how long Ms. McLean was out of the facility and the specific dates of her absence. Mr. Sachsel told me he did not know the specific dates that Jim McLean had the information. I informed Mr. Sachsel that I would inquire with my client regarding the applicability of the 2006 contract and that I would clean up the lawsuit if I confirmed there was a problem with that part of the claim.

As stated above, Defendant Ray did not "clean up the lawsuit." Rather, with total control over when the Order permitting filing of the Amended Arlington Complaint would be presented to the court, Defendant Ray filed his new claim, which asserted applicability of the 2006 contract. His misconduct forced Edith McLean to file a motion for summary judgment.

As another discrete act Defendant Ray gave a false discovery response. *See Judy v. Blatt, Hansenmiller, Leibsker &Moore, LLC*, 2010 U.S. Dist. LEXIS 8027 (N.D. Ill. 2010) at *14 -*16 ("The FDCPA's scope means that mine-run litigation tactics may be abusive or 'harassing' under the FDCPA. *See, e.g., Campos v. Brooksbank*, 120 F. Supp.2d 1271, 1274 (D. N.M. 2000) (finding, *inter alia*, that noticing a deposition for a wrongful purpose in the course of a collection action is a well-pled violation of the FDCPA separate from the normal course of the Collection Action. *Id.* at

*15).["][3]

*Nutter, supra,* held (500 F. Supp 2d at 1223):

> The alleged misrepresentation in the discovery claim, however, is not a new communication about an old claim. The dispute about the status of discovery did not arise until January 25, 2006, when Chou state in an affidavit in the state court action that NFS's discovery requests remained wholly outstanding. The discovery dispute did not relate back to the previous claim but instead served as the basis for a new alleged misrepresentation. Moreover, because plaintiffs filed this federal action within a year of the alleged discovery-related misrepresentation, the statute of limitations does not bar this claim.

## III. DEFENDANTS' DEFENSES

**A.** Defendants' contentions that they should be relieved of liability rest, primarily, two defenses: (1) the Statute of Limitations, and (2) *bone fide* error. Neither has merit.[4]

The Statute of Limitations is discussed above. The 10 violations (5 for each Plaintiff) with respect to which we seek summary judgment all occurred after May 5, 2009. Since they are discrete violations, they are not time barred. As demonstrated, *supra*, the Arlington Amended Complaint was not for the same debt claimed in the Arlington Complaint. It was filed to have "all of [ManorCare's] claims against the defendant consolidated into a single Complaint" (Exhibit D at 1, 3).

---

[3]

Defendants cited *Judy* at page 9 of their Reply (Document 38) to our Opposition to the Rule 12(b)(6) motion as it relates to the concept of a continuing violation. At oral argument on December 20, 2010, we pointed out what *Judy* says, as stated above. *See* December 10, 2010 transcript at 11-13. Interestingly, after having relied on *Judy*, Defendants do not cite that case in support of their Summary Judgment Motion.

[4]

In their Answer Defendants also asserted a defense of Failure to Mitigate Damages. That defense was based on the argument that there had been a settlement of the Arlington case. Defendant Ray's testimony plainly showed that there was no settlement since there was not an agreement on all material terms. *See* Ray Dep. at 110-114.

Defendants also contended that James McLean lacked standing to sue. That argument clearly was rejected by the Court at the December 10, 2010 hearing on Defendants' Rule 12(b)(6) Motion. *See* transcript of December 10, 2010 hearing at 8-9, 16.

Defendants' argument that the Amended Arlington Complaint was simply a new communication about the same debt makes no sense. Followed to its logical conclusion a creditor could sue a defendant for one debt that had become due and add later debts that became due after the filing of the suit, commit violations of the FDCPA and preclude any claims for FDCPA violations relating to the later added claim. That makes no sense, and it is not the law.

**B.** Nor does the *bona fide* error defense have merit. That is so for a number of reasons:

    **1.** "*Bone fide* error" is an affirmative defense on which the party asserting it has the burden of proof. *Jenkins v. Heintz*, 124 F.3d 824, 828, 834 (7th Cir. 1997).

    **2.** In this case, Defendants have shown only that, according to Defendant Ray, he has certain procedures in place with respect to the amount of the claimed. debt. He states that he reviews a referral sheet from the client, which states the amount of the debt and examines whether that amount agrees with the ledger sheet supplied by the client. He states he obtains an affidavit from the client with regard to the validity of the claimed debt. Such "bare bones" procedures certainly are not the detailed safeguards the court found met the standard in *Jenkins*. *See* 124 F.3d at 834. Indeed., when compared to the elaborate procedures in *Jenkins*, Mr. Ray has nothing.

Assuming, *arguendo*, that this would be sufficient in ordinary circumstances, at the time Defendant Ray filed the Amended Complaint he was well aware that there were problems with the amount of the bill. He dealt with James McLean who told him in detail of such problems (Exhibit 14 at ¶¶ 26. Thus, he had every reason to do further inquiry in his capacity as a debt collector. Moreover, *though Defendant Ray claims to have procured affidavits to support the various Arlington Complaints, it is interesting to note that none of the three Complaints has an affidavit attached, no copy of any affidavit Ray claims to have obtained was submitted in support of Defendants' Summary Judgment Motion, and no such document was produced in discovery*. Ray's statement is an assertion

unsupported by evidence.  Defendant Ray further represented that he reviewed the 2006 contract.

Strangely, the contract was not attached to the Arlington Complaint.

      **3.**  Even were the Court to determine that Defendants met their burden with respect

to sufficient procedures applicable to the amount sued for, there was absolutely no procedure in place

to assure that Defendants did not improperly seek attorney's fees.  Indeed, the Record shows that

even with information in his own files that showed Edith McLean had been out of the facility for

more than 15 days – in fact nearly 20 months – Defendant Ray checked nothing.  His own file, which

was brought to his attention by his secretary, showed that Edith McLean had been at ManorCare

from July 30, 2006 until September 7, 2006.  That there was no procedure in place is made

abundantly clear by Ray's statement that he routinely includes an allegation of continuous residency

in his pleading (without checking), even though he knows that people frequently are admitted to the

facility, go out of the facility, and are readmitted.  *See* Ray Dep. at 67, 70 ("It is very ordinary and

very usual that persons are admitted to facilities, they leave the facility, and they are readmitted to

the facility;" and, "The continuous stay language in my pleading is standard form that I use in terms

of the pleading.").

      **4.**  Leaving the contract aside, Defendant Ray sought "interest."  There is no provision

in the contract that permits interest.  Without such authorization, or some other legal basis, seeking

interest is a clear violation of the Act.  Defendant Ray has no procedures in place to avoid violating

the Act.  It is clear he has no conception of his FDCPA obligations as a debt collector.  The

Arlington Complaint sought interest from March 1, 2009.  The Amended Arlington Complaint

sought interest from May 8, 2009.  The Second Amended Arlington Complaint seeks interest from

May 1, 2009.  There is nothing of which we know in Virginia law that permits such interest.  As

such, this is a clear violation of the Act.  *See West v. Costen*, 558 F. Supp. 564, 581-82 (W.D. Va.

1983), holding that absent contractual agreement, only charges expressly permitted by law may be claimed without violating the Act.   Thus, unless such a charge is expressly permitted by law, claiming such a charge violates the Act.   *See Neild v. Wolpoff & Abrhamson*, 453 F. Supp.2d 918, 924 (E.D.Va. 2006).

      **5.**   As mentioned, *supra*, Defendant Ray also sues for and claims expenses his client will not in fact incur.   He obtains judgments which provided for an attorney fee of a specified amount, bills the client less, and the overage goes to his client.   Thus, even where ManorCare's form contract applies, he obtains for his client funds to which it is not entitled under the contract.   As stated above, the contract provides for recovery of expenses to ManorCare.   It does not provide for a windfall as a penalty for not paying, or being unable to pay, the charges ManorCare claims.

## IV.  COUNTS XI AND XII AND XXIII AND XXIV STATE VALID CLAIMS.

    **A.**   Defendants' claim that in giving a false discovery response Defendants did not violate the Act because all Defendant Ray did was pass on what their client's General Counsel's Office provided.   *See* Def. Mem. at 26-27.  Clearly, the claim based on the false discovery response (misconduct in litigation) is a discrete act committed within the Statute of Limitations.   *See, supra.*

      According to Defendants a debt collector attorney has no obligation to even attempt to be sure a discovery response is accurate.   This argument, to say the least, is remarkable.   However, in this case, there is not some hidden inaccuracy.   The list delivered by Mr. Ray was incredible on its face.   Thus, for a number of present or former ManorCare employees, the list shows "no information."   For two employees, Lucille Brown and Bev Ingles, it shows their addresses at ManorCare's Corporate Headquarters in Toledo, Ohio.  Mr Ray knew full well that Lucille Brown is a CNA (Certified Nursing Assistant).  He knew that because he had spoken to her.   *See* Ray Dep. at 156.  He described the suggestion that Ms. Brown was in a management position in Toledo as,

"That is ridiculous" (Ray Dep. at 170).   As to Bev Ingles, he knew she was the bookkeeper in Arlington and had frequent contract with her.   *See* Ray Dep. at 21-22, 51, 123, 125, 127, 173.

Moreover, that a corporation that operates 350 nursing homes does not have personnel records showing its employees addresses strains credulity.   Even for those who had left, it would at least have their last known addresses.

Defendant Ray provided this information in response to a discovery request.   He at least had an obligation to look at it and see that it facially could not be correct.   He was not simply a messenger delivering a package with unknown contents.

*See Syyed v. Wolpoff & Arbramson, supra,* 485 F.3d at 234-35; *Nutter, supra*; *Judy, supra*; *Campos, supra.*

That the information was false was demonstrated by Defendants' Initial Disclosures in this case, and by Defendants' Rule 26 Disclosures.

**B.**   The Record is clear that Defendants sought a *quantum meruit* recovery in a specific dollar amount that equals to the cent what they claimed for breach of contract.   That is a knowingly false claim for which they had no basis in fact.   That is made plain by the fact that the Interrogatory Response was that they required expert testimony.   A *quantum meruit* claim rarely, if ever, equals precisely the charges that are billed.   Thus, by seeking the dollar specific amount, Defendants were making a knowingly false claim as to the amount of the debt.

## V.   DEFENDANTS' INAPPROPRIATE *AD HOMINEM* ATTACKS

Defendants suggest (Def. Mem. at 6) that this is "a case where the Plaintiffs have used a well-intentioned statute – which was created to curb truly abusive collection tactics by unscrupulous debt collectors – in an effort to avoid responsibility for paying a nursing home and to attempt to extract money damages primarily relating to fees incurred defending a lawsuit that they brought upon

24

themselves."  The argument is both inappropriate and incorrect as a matter of law.

Apart from the fact that wrongdoing by a consumer creditor is not a defense to a debt collector's violations of the Act (*FTC v. Check Investors*, 502 F.3d 159, 168-69 (3rd Cir. 2007); *Bass v. Stopler, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1329-30 (7th Cir. 1967); *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998), there is absolutely no evidence that Plaintiffs have used this case to in any way affect the Arlington litigation.  The same cannot be said of Defendants who have attempted to inject certain aspects of the Arlington case into matters in this case.  Moreover, there is nothing to remotely suggest that the disputes over ManorCare's billings were and are not *bona fide*.  Even Defendant Ray admitted that there were many errors in ManorCare's billings.  Thus, Ray stated that in preparing the Second Amended Arlington Complaint, "I instructed my client that I didn't want any issues going forward *given all the errors that had occurred in billing*" (Ray Dep. at 71, emphasis added).

The Record shows that James McLean made a number of good faith efforts to resolve the issues both with ManorCare and Ray.  *See* Exhibit 14 ¶¶.  Defendants do not limit their attack to James McLean.  They even include his mother, whom they describe as "a 94 year-old widow with dementia" (Def. Mem. at 1).

Defendants seem to believe that when one does not like the message, he should kill the messenger.

In any event, Defendants' paint an incorrect picture.  The facts relating to these matters, which are irrelevant and immaterial to the issues of whether Defendants violated the Act, are accurately stated in Exhibit 14 and Plaintiff's Memorandum in Support of Motion for Reconsideration of Order of February 11, 2011, which was sworn to be factually correct by James McLean.

25

## VI.  CONCLUSION

For the foregoing reasons and those stated in Plaintiffs' Response to Defendants' Motion for Summary Judgment, Plaintiffs' Motion for Summary Judgment should be granted with respect to Counts VIII thorough XII and Counts XX through XIV of the Complaint.  Defendants' Motion for Summary Judgment with respect to said Counts should be denied.  Additionally, the Court should either voluntarily dismiss Counts II through VII and Counts XIV through XIX of the Complaint, or granted Defendants' Motion for Summary Judgment on said Counts solely on the ground that said Counts are barred by the Statute of Limitations.  Thereafter, a hearing should be set to determine damages and attorney's fees and costs in this case.

Respectfully submitted,

_____
/s/
Allen H. Sachsel
Virginia Bar No. 65896
Attorney for James L. McLean and Edith L. McLean
Law Offices of Allen H. Sachsel
10521 Judicial Drive, Suite 307
Fairfax, Virginia 22030
Telephone Number: (703) 385-9400
Fax Number: (703) 385-1007
email: ahs@saarmstrong.
Counsel for James L. McLean and Edith L. McLean

<u>CERTIFICATE OF SERVICE</u>

I certify that on March 28, 2011, I will electronically file the foregoing Memorandum in

Support of Plaintiffs' Amended Motion for Summary Judgment with the Clerk of the Court using

the CM/EF system, which will then send notification to the following:

David J. Gogal, Esquire
Blankingship & Keith, P.C.
4020 University Drive, Suite 300
Fairfax, Virginia 22030
Phone: (703) 691-1235
Fax: (703) 691-3913
email:  dgogal@bklawva.com

William B. Porter, Esquire
Blankingship & Keith, P.C.
4020 University Drive, Suite 300
Fairfax, Virginia 22030
Phone: (703) 691-1235
Fax: (703) 691-3913
email: wporter@bklawva.com

Michael L. Chang, Esquire
Blankingship & Keith, P.C.
4020 University Drive, Suite 300
Fairfax, Virginia 22030
Phone: (703) 691-1235
Fax: (703) 691-3913
email: mchang@bklawva.com

_____
/s/
Allen H. Sachsel
Virginia Bar No. 65896
Attorney for James L. McLean and Edith L. McLean
Law Offices of Allen H. Sachsel
10521 Judicial Drive, Suite 307
Fairfax, Virginia 22030
Telephone Number: (703) 385-9400
Fax Number: (703) 385-1007
email: ahs@saarmstrong.
Counsel for James L. McLean and Edith L. McLean