

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JAMES L. McLEAN and )
EDITH L. McLEAN, )
   )
Plaintiffs, )
   )
v. ) Civil Case No.: 1:10-cv-456
   )
RONALD A. RAY, ESQ. and )
ECONOMOU, FORRESTER, & RAY, )
   )
Defendants. )

## MEMORANDUM OPINION

Plaintiffs James McLean ("Mr. McLean") and Edith McLean ("Ms. McLean") (collectively "Plaintiffs") brought this suit against Ronald A. Ray ("Mr. Ray") and Mr. Ray's law firm, Economu, Forrester & Ray ("Economou") (collectively "Defendants"), for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (the "FDCPA"). The case arose out of a dispute regarding money allegedly owed by Ms. McLean to one of Defendants' clients, ManorCare of Arlington ("ManorCare"). Plaintiffs have previously dismissed Counts I and XIII of their Second Amended Complaint. (Dkt. No. 88). Plaintiffs have also moved to dismiss Counts II through VII as well as Counts XIV through XIX, and this Court has granted that motion. (Dkt. No. 114).

This matter comes now before the Court on Plaintiffs' Motion for Summary Judgment (Dkt. Nos. 97, 101), and Defendants' Motion for Summary Judgment (Dkt. No. 92). The parties have fully briefed and argued the motions, and the matter is ripe for disposition. For reasons stated in open court and in this Memorandum Opinion, the Court grants Defendants' Motion for Summary Judgment, and denies Plaintiffs' Motion for Summary Judgment.

## JURISDICTION AND VENUE

Plaintiffs brought this civil action to redress alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k.

A substantial part of the events or omissions giving rise to this claim occurred within the Eastern District of Virginia. Venue therefore lies in this Court pursuant to 28 U.S.C. § 1391.

## FACTUAL AND PROCEDURAL HISTORY

The undisputed facts of the case are as follows. Ms. McLean is a 94 year old widow temporarily residing in a medical care facility in Maryland. Her son, Mr. McLean, has at all times relevant held medical and general powers of attorney for her.

Mr. Ray is an attorney engaged in the practice of representing creditors in their efforts to collect debts. He is an employee of Economou, a law firm that maintains offices in Alexandria, Virginia. At all times relevant, Mr. Ray acted for and on behalf of Economou.

Ms. McLean was a patient at ManorCare, a healthcare facility, from on or about July 30, 2006 until on or about September 7, 2006. In November 2007, Mr. Ray sued Ms. McLean in Arlington County General District Court (the "2007 lawsuit"). Mr. Ray was acting on behalf of ManorCare to collect a debt alleged to be owed for services rendered to Ms. McLean from July 30, 2006 to September 7, 2006. The warrant from the 2007 lawsuit listed an address for service on Ms. McLean located in Falls Church, Virginia. ManorCare nonsuited the 2007 lawsuit when the parties resolved the matter.

Ms. McLean returned to ManorCare on April 28, 2008. Ms. McLean did not sign a new contract at the time of her April 2008 admission to ManorCare. She remained at ManorCare until May 8, 2009.

In 2009, ManorCare hired Defendants to collect on another debt allegedly owed by Ms. McLean for services provided in 2008 and 2009. To date, Plaintiffs maintain that these billings were inaccurate and included "double billings, billings for services not performed . . . billings for unnecessary services, and billings for unauthorized services." Second Am. Compl. ("Compl.") ¶ 13.

While Mr. Ray was preparing correspondence and a legal complaint in connection with the collection matter, his secretary brought to his attention that there was an existing file relating to the 2007 lawsuit. Mr. Ray looked at the file, and saw that the 2007 matter had been resolved by the parties. Ray has described his review of the file as "cursory."

On March 25, 2009, Mr. Ray mailed a letter to Ms. McLean claiming that Ms. McLean owed ManorCare $15,814.44, plus interest, and reasonable attorney's fees and costs as allowed. The letter further stated, "[e]nclosed is a copy of the suit papers, including an itemized statement of account, which has been filed against you in Arlington County Circuit Court to recover the amount owed." Pls.' Mem. in Support of Mot. Summ. J. ("Pls.' Mem."), Ex. 1, March 24 Letter. Mr. Ray also sent the letter to Mr. McLean, which Mr. McLean received and read on or about April 25, 2009.

On March 27, 2009, Defendants, acting for ManorCare, sued Ms. McLean in the Arlington County Circuit Court for the amount alleged to be owed (the "Arlington Lawsuit"). The Complaint (the "Arlington Complaint") alleged that Ms. McLean was a patient at ManorCare from the time of her admission in July 2006 "up to and including the present time." Pls.' Mem., Ex. 2, Arlington Compl. ¶¶ 1-2. The Arlington Complaint's allegation of continuous residence was inaccurate because, as previously noted, Ms. McLean did not live at ManorCare from between September 2006 until April 2008.

The question of continuous residence was relevant to the Arlington Lawsuit because of language that appeared in the admission agreement (the "Agreement"). The Agreement stated, "[t]his Agreement begins on the day You are admitted to the Center and ends on the day You are discharged from the Center unless you are readmitted within 15 days of Your discharge date." Pls.' Mem., Ex. 3, Arlington Am. Compl. 7. The Agreement also provided that, should ManorCare hire a collection agency or attorney to collect payment, the debtor would pay for these collection costs. Plaintiffs signed the Agreement on or about July 31, 2006.

The Arlington Complaint alleged that Ms. McLean breached the Agreement by failing to pay ManorCare for services rendered to her. Pursuant to the Agreement, ManorCare sought judgment in the amount of $15,814.44, plus interest, reasonable attorney's fees, and costs incurred in prosecution of the case.

On October 9, 2009, Mr. Ray, acting as counsel for ManorCare, filed an Amended Complaint in the Arlington County Circuit Court (the "Arlington Amended Complaint"). Mr. Ray increased the *ad damnum* in the Amended Complaint, alleging that Ms. McLean owed additional money for debts incurred after the filing of the initial Arlington Complaint. The Amended Complaint also alleged that, by accepting the benefits of the services rendered by ManorCare, Ms. McLean impliedly obligated herself to pay ManorCare in *quantum meruit* for the reasonable value of the services rendered to avoid unjust enrichment. Like the initial Complaint, the Amended Complaint also sought interest, attorney's fees, and costs.

On October 30, 2009, Ms. McLean's counsel served and filed an Answer and Counterclaim in response to the Arlington Amended Complaint. The Answer pled as a defense that there was no written contract relevant to the case.

In November 2009, Ms. McLean's counsel served Requests for Admission directed to the absence of an applicable written contract. Mr. Ray admitted in his response that no written contract existed to support a claim for attorney's fees. Mr. Ray subsequently dismissed Count I for breach of written contract before filing a Second Amended Complaint ("Arlington Second Amended Complaint") on January 8, 2010. The Arlington Second Amended Complaint sought judgment in the amount of $65,809.50, and dropped the claim for attorney's fees.

In the course of litigating the Arlington Lawsuit, Mr. Ray forwarded to Ms. McLean's counsel a document created by ManorCare containing names and contact information for various ManorCare employees, as requested by Ms. McLean in discovery. Plaintiffs now contend that certain information contained in that document was "false."

Edith and James McLean initiated the lawsuit presently before this Court on May 5, 2010. (Dkt. No. 1). Plaintiffs filed an Amended Complaint on September 13, 2010 (Dkt. No. 5), and a Second Amended Complaint on November 2, 2010. (Dkt. No. 26). The Second Amended Complaint originally contained 24 counts.

On February 11, 2011, this Court granted Plaintiffs' Motion to Voluntarily Dismiss Counts I and XIII. (Dkt. No. 88). Plaintiffs have also elected not to pursue Counts II through VII and Counts XIV through XIX. The Court has dismissed these claims without prejudice. (Dkt. No 114). Counts VIII through XII and Counts XX through XXIV remain before this Court for consideration.

## Discussion

1. Counts VIII, IX, XX, and XXI

Plaintiffs allege in Counts VIII and XX that, by seeking an incorrect amount in the Arlington Amended Complaint, and by seeking attorney's fees from March 1, 2009, Defendants

5

violated 15 U.S.C. § 1692e(2)(A) and (B). Compl. ¶¶ 52, 76. In Counts IX and XXI, Plaintiffs allege that, by failing to determine the accuracy of ManorCare's claim prior to signing and filing the Arlington Amended Complaint[1], Defendants violated 15 U.S.C. § 1692e. *Id.* at ¶¶ 54, 78. Defendants argue that the bona fide error rule contained in 15 U.S.C. § 1692k(c) shields them from liability on these counts.

     a. Additional facts relevant to Counts VIII, IX, XX, and XXI

The parties agreed during oral argument on the Motions for Summary Judgment that no additional facts were necessary to resolve the issues before the Court. The Court will herein summarize the undisputed facts relevant to these four counts. In 2009, ManorCare hired Defendants to collect on a debt allegedly owed by Ms. McLean for services provided in 2008 and 2009. After Mr. Ray received ManorCare's 2009 referral, he reviewed the standard account referral form, the residence agreement, and an itemized statement regarding Ms. McLean's account. He discussed the bill with his client, and he prepared a supporting affidavit for the ManorCare administrator's signature. These measures and safeguards constitute Mr. Ray's regular procedure.[2]

In reviewing the documents provided by ManorCare, Mr. Ray noticed the amount sought on the referral sheet did not match the figures included in the itemized statement. He consulted with his client, and revised the draft complaint to state a reduced amount owed. Mr. Ray decided

---

[1] The text of Counts IX and XXI in Plaintiff's Second Amended Complaint mistakenly refer to the *initial* Arlington Complaint, as opposed to the Arlington Amended Complaint. Plaintiffs have represented to the Court that they intended these Counts to refer to the Arlington Amended Complaint. For the purposes of the present Motions, this Court will consider Counts IX and XXI as referring to the Arlington Amended Complaint.

[2] Mr. Ray also followed his normal practice and procedure before filing the Arlington Amended Complaint.

6

not to use a supporting affidavit in the McLean matter because Ms. McLean continued to reside at the facility, and Mr. Ray assumed that he would need to amend the complaint prior to the entry of a final judgment order to include claims for additional services.

After he had drafted the complaint, Mr. Ray's secretary informed Mr. Ray that he had a file for a 2007 lawsuit he had filed against Ms. McLean. Mr. Ray looked at the file and reviewed the "close-out letter" to determine how the 2007 suit had concluded. He did not conduct further review of the file, because he did not think the two-year old information would be useful, and he had no reason to question the facts provided by ManorCare with regard to the 2009 claim. As a result, Mr. Ray did not discover that there was a break in Ms. McLean's residence at ManorCare, which rendered the terms of her original contract inapplicable to her second term of residence.

On June 23, 2010, Mr. Ray stated to an Arlington Circuit Court judge, "I don't really question these referral forms. I hope you understand people come into the nursing home all the time for care. They leave all the time for care at their hospital. They come back. They are readmitted." Pls.' Mem., Ex. 15, Dep. of Ronald A. Ray ("Ray Dep.") 15. In his deposition, Mr. Ray clarified, "I don't question them because the client fills them out, and I assume that the client is filling them out accurately. I don't have any reason to believe the client is filling them out inaccurately." Ray Dep. 17; *see also* Ray Dep. 57 ("In this case, in filing this suit, I reasonably relied on the information that I had from my client . . . . I didn't have any reason to believe my client had inaccurately completed their referral form.").

Plaintiffs emphasize that even if Mr. Ray was justified in including the contract claim in the first instance, Mr. McLean and his attorneys repeatedly put Mr. Ray on notice of the problems with the contract charge. The undisputed evidence shows that Mr. Ray and Mr. McLean had phone conversations in April 2009. At no point, however, did Mr. McLean inform

Mr. Ray that the 2006 contract did not apply to Ms. McLean's 2008-2009 admission to ManorCare. The conversations centered on whether the correct balance then owed was $70,000 or $49,000. The subject of ManorCare's claim for attorney's fees never came up, nor did Mr. McLean mention any issue regarding the applicability of the 2006 contract to ManorCare's claim, nor did he suggest that Ms. McLean had not been the facility continuously since 2006.

On July 16, 2009, Mr. Ray received an email from Stephen Armstrong ("Mr. Armstrong"), then acting as counsel for Plaintiffs, which stated that ManorCare's invoices "are not supported by contract." Defs.' Mem. in Support of Mot. Summ. J. ("Defs.' Mem."), Ex. B., Aff. of Ronald A. Ray ("Ray Aff.") ¶ 12. In a subsequent phone conversation, Mr. Armstrong explained that the contract was from 2006, whereas the charges claimed in the Arlington Complaint were 2008 and 2009 charges. Mr. Armstrong said nothing about the contractual claim for attorney's fees.

Sometime between September 22, 2009 and September 28, 2009, Mr. Ray spoke with Allen Sachsel ("Mr. Sachsel"), counsel for Plaintiffs, on the phone. Mr. Sachsel stated, for the first time, that the 2006 contract did not apply to the charges claimed in the Arlington Complaint due to Ms. McLean's departure from and readmission to ManorCare. Mr. Ray asked Mr. Sachsel how long Ms. McLean was out of the facility and the specific dates of her absence. Mr. Sachsel did not know. Mr. Ray told Mr. Sachsel that he would inquire with his client regarding the applicability of the 2006 contract and "clean up" the lawsuit if he confirmed there was a problem with that part of the claim. Ray Aff. ¶ 13.

On or about September 28, 2009, Mr. Ray called Bev Ingles ("Ms. Ingles") from ManorCare's business office regarding Mr. Sachsel's contention. Ms. Ingles stated that she did not have access to the information, but she would check on it. The following week, Mr. Ray

8

called once or twice more, and emailed, but he received no response. He came to find out that the file was not immediately available because of an investigation into Mr. McLean's threats of violence against ManorCare staff. The person conducting that investigation had left her position, and her successor was unable to find the file immediately.

On October 16, 2009, in a meeting at Mr. Armstrong's office, Mr. Armstrong raised the issue of the inapplicability of the 2006 contract. Mr. Ray told him that he still had not been able to confirm the facts regarding Ms. McLean's break in residence with his client.

The Answer and Counterclaim to the Arlington Amended Complaint, filed October 30, 2009, provided specific dates of Ms. McLean's discharge and readmission to ManorCare. Thereafter, Mr. Ray was able to confirm the relevant facts with ManorCare. After reviewing the dates in the recently located file, discussing the case, and exploring possible legal theories, Mr. Ray concluded that the best course of action would be to dismiss the breach of contract claim and pursue the claim on breach of an oral contract as well as implied contract counts.

In the meantime, Mr. Sachsel served requests for admission directed to the validity of the written contract. Mr. Ray has testified that he told Sachsel the first week of November that he would amend the claim, and that he believes Mr. Sachsel was "churning the case" for attorney's fees. Ray Dep. 131-32. Mr. Ray was, however, still investigating his options for amending the pleading at the time. Mr. Sachsel then filed a motion for summary judgment on the written contract count. Mr. Ray told Mr. Sachsel he did not know why he was filing such a motion because Ray was going to amend the complaint, and that he was still considering how he would do it. On January 8, 2010, the parties presented an agreed order to the state court dismissing the breach of written contract claim.

### b. Analysis

The FDCPA is a strict liability statute, *see Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996), and a plaintiff need only prove one violation of the Act to trigger liability. *See Cavallaro v. Law Office of Shapiro & Kreisman*, 933 F. Supp. 1148, 1153 (E.D.N.Y. 1996). The Act, however, provides defendants with an affirmative defense: no debt collector may be held liable if that debt collector shows by a preponderance of the evidence that (a) the violation was not intentional; (b) it resulted from a bona fide error; and (c) the error occurred despite the debt collector's "maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).

Available case law does not establish a clear set of standards that a debt collector defendant must satisfy in order to qualify for the bona fide error defense. Nonetheless, cases from within the Fourth Circuit offer helpful guideposts for analyzing Defendants' claim. In *Amond v. Brincefield, Hartnett*, 175 F.3d 1013, 1999 WL 152555 (4th Cir. Mar. 22, 1999), the Fourth Circuit upheld a lower court decision granting summary judgment to lawyer-defendants in an FDCPA action. The plaintiff in *Amond* claimed that the lawyers violated the FDCPA by attempting to collect a debt that was not owed, and by verifying an $11,777 balance on the loan that was in error. *Id.* at *1. The district court concluded that the lawyers had no reason to question the amount of debt they were attempting to collect for their client, and held that the lawyers "cannot be held liable for what appears to be an honest dispute regarding the amount of the debt, so long as there exists a colorable factual basis for the higher amount claimed by their client." *Id.* at *2. The Court of Appeals found "no error in the district court's conclusions on this point." *Id.*

The *Amond* plaintiff also argued that, even if the lawyers did not intentionally attempt to collect an overstated debt, they were not entitled to rely blindly on their client's statement of the amount due. *Id.* at *3. The Court disagreed, holding that the FDCPA did not create a heightened duty of investigation for lawyer-debt collectors engaging in ordinary debt collection activity. *Id.* The Court concluded that "the district court properly rejected Amond's second argument on the ground that the lawyers had a 'colorable factual basis' for the deficiency claim asserted against Amond." *Id.* at *4. *See also Jenkins v. Heintz*, 124 F.3d 824, 833 (7th Cir. 1997) (holding that FDCPA does not require lawyers to conduct independent legal analysis for each aspect of creditor's claim).

In *Shah v. Collecto, Inc.*, No. Civ. A. 2004-4059, 2005 WL 2216242 (D. Md. Sept. 12, 2005), the plaintiff argued that the defendant's erroneous report to a credit reporting agency violated the FDCPA. The Court rejected the plaintiff's argument, citing several factors. First, as the Court noted, the error at issue was due to the mistake of a third party. *Id.* at *8. Second, defendants "had no reason to know of the potential invalidity of the debt until Plaintiff disputed [them]." *Id.* Lastly, defendants acted "almost immediately" to investigate the validity of the debt and address the error. *Id.*

The undisputed facts bring the present matter within the scope of *Amond* and *Shah*. ManorCare provided Mr. Ray with a referral form, a residence agreement, and an itemized bill for services. Mr. Ray reviewed the documents, and confirmed the amount owed with his client. There was clearly a colorable basis for ManorCare's claim, and Mr. Ray could reasonably rely on ManorCare's representations. Plaintiffs argue that Mr. Ray *should have* more closely examined two-year old files to fact-check his client's representations regarding continuous residence. The Fourth Circuit has, however, explicitly rejected the position that a debt collector

is not entitled to rely reasonably upon his client's word, at least where there is a colorable basis for the claim. *Amond*, 1999 WL 152555.

As to Plaintiffs' arguments regarding notice of the error, the undisputed evidence shows that neither Mr. McLean nor Mr. Armstrong nor Mr. Sachsel put Mr. Ray on notice of the contract problem until late September 2009. Mr. Ray immediately contacted his client, and he was able to confirm the problem by the end of the next month. Mr. Ray told Mr. Sachsel he would amend the complaint, but Mr. Sachsel forged ahead, propounding discovery and moving for summary judgment on that claim. This Court does not find that Mr. Ray's actions constitute unreasonable delay or evidence any unsavory motive so as to defeat Defendants bona fide error defense.

Lastly, while available case law does not set forth definitive standards regarding the third element of the bona fide error defense, this Court is satisfied that, under the undisputed facts, Mr. Ray maintained procedures "reasonably adapted" to avoid the alleged errors. *See Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1274 (11th Cir. 2011) ("Despite surveying the case law, we have located no definitive list of procedures, or even universally applicable parameters, by which to assess the third element. Rather, the legal analysis has proceeded on a case-by-case basis and depended upon the particular facts and circumstances of each case."). As previously discussed, Mr. Ray reviews referral forms and itemized statements before he proceeds with legal action. He consults with the client about any discrepancies. He seeks an affidavit confirming the amount sought. In the present case, Mr. Ray made a true effort to verify the accuracy of ManorCare's claim, and, once the discrepancy caused by ManorCare's clerical error came to light, Mr. Ray took action to address the problem. This Court holds that Defendants are entitled to a bona fide

error defense. Accordingly, Defendants' Motion for Summary Judgment on Counts VIII, IX, XX, and XXI is granted.[3]

2. Counts XI and XXIII

Plaintiffs allege in Counts XI and XXIII that, by falsely claiming amounts due, and by falsely making a *quantum meruit* claim with no basis in fact, Defendants violated 15 U.S.C. § 1692e(2)(A). Compl. ¶¶ 58, 82. Plaintiffs' claims arise out of two sentences that appear in the Defendants' Response to Interrogatories in the Arlington Lawsuit. In response to an interrogatory seeking the "basis [in the Arlington Amended Complaint] for the allegation . . . that each charge represents the reasonable value of the item or service ManorCare claims to have provided to [Ms. McLean]," Defendants provided the following:

> "The rates of each item charged in Plaintiff's Exhibit 2 are determined based upon the reasonable value of the time or service charged, the charges for such items by other facilities in the market and a cost basis evaluation as determined by ManorCare in setting prices based on its overall operating income and expenses. This response will be supplemented upon designation of expert witnesses in response to Interrogatory No. 1 above."

Defs.' Mem., Ex. F, ManorCare Resp. to Interrog. 1-2. Plaintiffs contend that this statement shows that the dollar-specific *quantum meruit* claims appearing in both Arlington Amended Complaints lacked a factual basis.

Contrary to Plaintiffs' allegations, the response provided by Defendants clearly states the basis for the *quantum meruit* figure: a reasonable value of the services, as determined by the market, plus costs. Plaintiffs appear to argue that, because the *quantum meruit* claim was for the

---

[3] Plaintiffs have also argued that Defendants violated the FDCPA by seeking interest in the Arlington Amended Complaint. Virginia law permits parties to seek pre-judgment interest, which may be awarded at the discretion of the trier of fact. *See, e.g., Upper Occoquan Sewage Auth. v. Blake Constr. Co.*, 655 S.E.2d 10, 23 (Va. 2008). Notwithstanding Plaintiffs' arguments to the contrary, the language in the complaint is fairly read as seeking only pre-judgment interest on the amounts past due at the time of judgment.

13

same dollar amount as the contract claim, a fact finder could conclude that the *quantum meruit* claim had no independent fact basis. This argument fails. First, the inferential jump that Plaintiffs invite the Court to make is unwarranted by the facts. The contract rates set by ManorCare presumably reflect the market value of services plus costs associated with items and facilities. Naturally, the amount due under a contract with ManorCare will track the *quantum meruit* value of the services rendered.

Second, and more importantly, Plaintiffs' argument has no factual support in the record. Mr. McLean has testified that he does not know the value of the services provided by ManorCare, Defs.' Mem., Ex. A, McLean Dep. 123, 132, and Plaintiffs have otherwise offered only unjustified inferences and speculation. Plaintiffs bear the burden of proving that the *quantum meruit* claim was baseless in trial; simply suggesting that the numbers "smell fishy" would not entitle Plaintiffs to judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986) ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). The Court grants summary judgment to Defendants on these two counts.

3. Counts X and XXII

In Counts X and XXII, Plaintiffs allege that Mr. Ray falsely represented that he would "do inquiry prior to filing the Amended Complaint and would not reassert the 2006 contract as a basis for recovery and for attorney's fees." Compl. ¶¶ 56, 80. Plaintiffs contend that this representation violated 15 U.S.C. § 1692e. Compl. ¶¶ 56, 80.

The Court can resolve these two counts on the undisputed facts. Plaintiffs' allegation of misrepresentation rests upon a single statement appearing in Mr. Ray's affidavit. That statement reads, "I informed Mr. Sachsel that I would inquire with my client regarding the applicability of the 2006 contract and that I would clean up the lawsuit if I confirmed that there was a problem with that part of the claim." Ray Aff. ¶ 13. Plaintiffs do not dispute that these were Mr. Ray's words, but instead encourage this Court to interpret the statement as a promise by Mr. Ray to amend the Arlington Complaint and remove the breach of written contract claim. Such an interpretation reads out a crucial qualifier: that Mr. Ray would only "clean up the lawsuit" once he confirmed with his client that the 2006 contract was not applicable. Mr. Ray has sworn in a subsequent affidavit that he never told Plaintiffs, or Plaintiffs' counsel, that the Amended Complaint in the Arlington Lawsuit would not include Count I for breach of a written contract. Defs.' Opp'n, Ex. E, Second Ray Aff. ¶ 4. Plaintiffs' proposed interpretation is directly contradicted by a plain reading of Mr. Ray's actual statement and by the undisputed facts on the record. This Court grants judgment to the Defendants on Counts X and XXII.

4. Counts XII and XXIV

Plaintiffs allege in Counts XII and XXIV that Mr. Ray gave a false discovery response in violation of 15 U.S.C. §§ 1296e and 1692f. Compl. ¶¶ 60, 84. Specifically, Plaintiffs assert that, during the course of discovery in the Arlington Lawsuit, Mr. Ray provided a response that falsely represented that certain employees were at ManorCare's corporate headquarters in Toledo, Ohio. Plaintiffs further allege that Mr. Ray knew that these employees were not in Toledo, Ohio.

Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692f prohibits a

debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." In the present case, there is neither factual nor legal support for the argument that Mr. Ray made a "false statement" or "misrepresentation." Mr. Ray forwarded a list from ManorCare of names and addresses for various employees. Even assuming that Mr. Ray's actions in doing so constituted a "representation" or "means of collecting a debt," his actions were not false, deceptive, or misleading, let alone "unfair or unconscionable." Mr. McLean was free to contact the persons appearing on the list through corporate headquarters or through counsel. There was nothing dishonest about ManorCare specifying the channels of communication through which certain employees could be reached. The Court therefore grants summary judgment to Defendants on these counts.

## CONCLUSION

For reasons set forth in open court and in this Memorandum Opinion, Defendants' Motion for Summary Judgment is granted as to all remaining counts. Plaintiffs' Motion for Summary Judgment is denied.

Alexandria, Virginia
May 18, 2011

/s/
Liam O'Grady
United States District Judge